# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

ELIZABETH DEBRA STEWART,

    Plaintiff,

v.             ACTION NO. 2:11cv597

MICHAEL J. ASTRUE,
Commissioner of the Social Security
Administration,

    Defendant.


## <u>UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

  Plaintiff brought this action under 42 U.S.C. § 405(g), seeking judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") that denied Plaintiff's claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, as well as Plaintiff's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

  This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by order of reference, dated January 23, 2012. This Court recommends that the decision of the Commissioner be VACATED and the case be REMANDED for further administrative proceedings.

# I. PROCEDURAL BACKGROUND

The plaintiff, Elizabeth Debra Stewart, filed applications for DIB and SSI on November 21, 2006, alleging she had been disabled since December 31, 2005. R. 161-63, 554-60.[1] She was found disabled beginning July 1, 2006, but not before. R. 548-53. Plaintiff filed for reconsideration of the portion of the decision that found her not disabled. R. 116-17. In the reconsideration opinion dated September 3, 2007, she was found not disabled at any time, and the earlier decision was reversed. R. 113-15, 527-59.

At Plaintiff's request, a hearing before an Administrative Law Judge ("ALJ") took place on May 6, 2008. R. 70-84. On October 24, 2008, ALJ Cummings found Plaintiff was not disabled. R. 47-59. The Appeals Council remanded the claim on May 20, 2009 (R. 37-40), ordering the ALJ to take testimony from a Vocational Expert in light of the claimant's significant non-exertional limitations. R. 39. A second hearing was held before ALJ Cummings on March 23, 2010. R. 85-93. On April 26, 2010, the ALJ issued a decision again denying Plaintiff's claim. R. 15-29. The Appeals Council denied Plaintiff's request to review the ALJ's decision on September 9, 2011, making the ALJ's decision the Commissioner's final decision. R. 6-10.

Having exhausted all administrative remedies, Plaintiff filed a complaint with this Court on November 8, 2011, in accordance with 42 U.S.C. § 405(g). ECF No. 1. Defendant Commissioner filed an Answer to the Complaint on January 19, 2012. ECF No. 4. The case is now before the court on the parties' cross motions for summary judgment. ECF Nos. 8 and 9. As neither counsel in this case has indicated special circumstances requiring oral argument in this matter, the case is deemed submitted for a decision based on the memoranda.

---

[1] Page citations are to the administrative record previously filed by the Commissioner.

# II. FACTUAL BACKGROUND

## A. Medical Evidence in the Record

The documents in the record related to Plaintiff's physical impairments are not addressed as "Plaintiff does not dispute the ALJ's conclusion on her exertional limitations." Pl.'s Mot. for Sum. J. 2 n.6; ECF No. 8.

On July 1, 2006, Plaintiff admitted herself to New York State Psychiatric Institute with a six-month history of severe weight loss (40-50 pounds), decreased appetite, lethargy, anhedonia, poor sleeping, poor concentration, and worsening psychomotor retardation (R. 242), stating she "just [didn't] feel right." R. 238. Plaintiff's daughters stated that Plaintiff had told them she felt like she was dying. *Id.* Her mental status examination at intake revealed poor eye contact, decreased speech, and a blunted affect; but, with a linear thought process and without paranoid ideations or delusions. R. 238. She denied any perceptual disturbances or suicidal/homicidal ideations. R. 239. Plaintiff's medical history was noted for 2 hospitalizations in 1996 due to anorexia and depression that resulted in a diagnosis of hyperthyroidism. R. 243. She had somatic preoccupations that food would not go down to her intestinal tract. *Id.* Plaintiff was an inpatient for six weeks, being discharged on August 17, 2006. R. 242.

Her therapists reported that during her stay, Plaintiff became "increasingly bright and more interactive" upon taking her medication. R. 244. She attended group counseling sessions, and admitted to "having fun" and "feeling good" in groups. R. 244.

During her final week, Plaintiff reported being in a good mood with improved energy and appetite. R. 245. She was excited and ready to go home. R. 245. After six weeks of treatment, Plaintiff was discharged on August 17, 2006, with a diagnosis of Bipolar II, current depressive episode. R. 247. She understood her diagnosis, and the need to follow up as an outpatient and

continue taking medications. R. 247. Upon discharge, she was eating regular meals and reported an euthymic, normal mood with no suicidal ideations or psychotic thoughts. R. 247. Her behavior was cooperative, interactive, and friendly; her speech was normal in terms of volume, rate, and productivity; her mood was "pretty good"; her affect was cheerful with the normal range of reactivity and no blunting; her thought process was linear and goal directed; her thought content was focused on her plans for discharge and medication regimen; and her insight/judgment was good. R. 247. She was advised to follow-up at a mental health treatment program in Virginia. R. 247. Her medications were Bupropion,[2] Risperidone,[3] and Levothyroxine.[4] *Id.* Plaintiff's final diagnosis was mood disorder due to general medical condition (hypothyroidism). R. 248. Her GAF score on discharge was 65.[5] *Id.*

On September 6, 2006, Plaintiff was seen for orientation into the Virginia Beach Department of Human Services mental health program. R. 284. On September 13, 2006, Plaintiff was seen for medication management. R. 283. Upon examination, she was oriented, her thoughts were organized and linear, her conversation was spontaneous and without delusional content, her mood was pleasant with no agitation or irritability, and her speech was normal. R. 283. It was noted that she was previously treated at the facility in 1996 and did well until December 2005, when she stopped eating and would lay around feeling depressed. R. 283. Plaintiff stated she was still having difficulties sleeping. *Id.* She was diagnosed with recurrent major depression. *Id.*

Plaintiff returned for a more detailed psychiatric evaluation on September 29, 2006. R.

---

[2] Bupropion (brand name Wellbutrin) is indicated for the treatment of major depressive disorder. Buproprion, www.rxlist.com/wellbutrin-drug/indications-dosage.htm (last visited Dec. 20, 2012).
[3] Risperidone (brand name Risperdal) is indicated for the treatment of schizophrenia and bipolar mania. Risperdal, www.rxlist.com/risperdal-drug/indications-dosage.htm (last visited Dec. 20, 2012).
[4] Levothyroxine is indicated for the treatment of hypothyroidism. Levothroid, www.rxlist.com/levothroid-drug/indications-dosage.htm (last visited Dec. 20, 2012).
[5] A GAF score of 61-70 indicates some mild symptoms. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. Text Revision 1994) ("DSM-IV-TR").

276-279. A mental status examination revealed soft and slow speech, a timid appearance, a tired and sad effect, a depressed mood, problems with short-term memory, and fair insight and judgment. R. 278-279. She was diagnosed with major depression, recurrent, with a GAF score of 45.[6] R. 279.

On October 2, 2006, James M. Laster, M.D., a psychiatrist with the Department of Human Services, conducted an evaluation. R. 254-56. Plaintiff's affect was appropriate and not significantly depressive, nor was an excessive degree of anxiety evident, however she exhibited decreased energy. R. 255. Plaintiff showed no evidence of hallucinations, delusions, or homicidal/suicidal ideations. R. 255. Dr. Laster determined that Plaintiff's insight and judgment were good. R. 255. While Plaintiff reported that her memory was impaired, Dr. Laster determined that Plaintiff did not appear to have any difficulty with her distant or immediate memory. R. 255. Plaintiff reported marked difficulties with appetite and sleep. R. 254. Dr. Laster diagnosed major depressive disorder, recurrent, moderate to severe. R. 255. Her GAF score was 50. *Id.* Dr. Laster prescribed Risperdal, Wellbutrin, and Restoril.[7] R. 256. On October 30, 2006, Plaintiff complained of feeling fatigued and difficulties with her memory. R. 270. Dr. Laster reduced her Risperdal and started her on Trazodone.[8] *Id.*

From September 2006 through January 2007, the notes from the Virginia Beach depression treatment group showed that Plaintiff was making moderate or slow progress. R. 257-59, 263-69, 271, 273, 327. On December 28, 2006, Plaintiff reported that she was "feeling pretty good" and had no specific complaints. R. 286.

---

[6] A GAF score of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). DSM-IV-TR, p. 34.
[7] Restoril is indicated for the treatment of insomnia. Restoril, www.rxlist.com/restoril-drug/indications-dosage.htm (last visited Dec. 20, 2012).
[8] Trazodone (brand name Desyrel) is indicated for the treatment of depression. Desyrel, www.rxlist.com/desyrel-drug/indications-dosage.htm (last visited Dec. 20, 2012).

On February 26, 2007, state-agency physician, David Deaver, Ph.D., completed a Mental Residual Functional Capacity ("RFC") Assessment. R. 297-300. Dr. Deaver concluded that Plaintiff was moderately limited in her ability to (1) understand, remember, and carry out detailed instructions, (2) work in coordination with or proximity to others without being distracted by them, (3) interact appropriately with the general public, and (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 297-98. In reaching his conclusions, Dr. Deaver relied on Plaintiff's daily living activities and medical records. R. 299-300. Dr. Deaver concluded that Plaintiff "is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from the impairments; that claimant is capable of simple, routine tasks and regular attendance despite the limitations resulting from her impairments." R. 300.

Also on February 26, 2007, Dr. Deaver concluded in a Psychiatric Review Technique assessment that Plaintiff had mild restrictions of daily living activities, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. R. 301-13. Plaintiff had one or two decompensation episodes. R. 311.

On March 21, 2007, Plaintiff reported to the Virginia Beach therapists that she was concerned that her depression would worsen if she tried new things. R. 383. The therapists assisted Plaintiff in identifying the signs of increased depression and how to cope with her fears. R. 383. Plaintiff agreed to start exercises to help in accepting change. R. 383.

On April 7, 2007, Michael L. Gambill, M.D., of the Virginia Department of Rehabilitative Services, examined Plaintiff. R. 315-19. Dr. Gambill determined that Plaintiff's overall affect was "somewhat blunted," although her mood was not depressed during the exam.

R. 318. He concluded that Plaintiff had some functional limitations, but it was unclear as to what degree. R. 318. He opined that Plaintiff's condition could improve. R. 318.

On May 9, 2007, Plaintiff reported that she had been studying the drivers' manual, because she wanted to learn how to drive. R. 378. She was thinking more positively and was hopeful about the future. R. 378. She received support from her peers, who encouraged her to pursue her goal. R. 370. The therapist noted Plaintiff was making moderate progress. R. 370, 378. On May 16, 2007, Plaintiff reported that she had a fairly low energy level during the day, and Dr. Laster noted that she appeared tired, but Plaintiff reported "she is doing fairly well." R. 377. Dr. Laster continued her current medications to treat depression, hypothyroidism, insomnia and symptoms of psychosis. R. 369.

On June 27, 2007, Plaintiff indicated that she was doing "fairly well." R. 369. There was no evidence of hallucinations, delusions, or paranoid ideations. *Id.* On June 27, 2007, Plaintiff returned to Dr. Laster and reported periods of feeling tired and sluggish. R. 369. No medication adjustments were made. *Id.* On July 23, 2007, Plaintiff reported that she had just returned from trips with her family to Atlanta and New York City for family reunions. R. 365. She reported positive experiences. R. 361, 365, 367.

On August 8, 2007, Plaintiff reported continued depression, as well as fatigue, lethargy, and recent hair loss. R. 362. Dr. Laster reduced her dose of Risperdal. *Id.* On August 13, 2007, Plaintiff reported that she had learned to "let go" of trying to "over-help others" and expressed a desire to work on her fear of learning to drive. R. 361. She rated her depression and anxiety as a two on a ten-point scale. R. 361. On August 27, 2007, Plaintiff reported that she was doing well. R. 359. She had just returned from a family trip to Washington D.C. R. 359. She rated her depression at zero, her anxiety at two, and her quality of life at seven. R. 359.

On September 10, 2007, she reported feeling "stuck" because she stays in the house. R. 358. She discussed with her therapist that she needed to take care of herself by adding leisure and nurturing activities to counterbalance her stress. R. 358.

On October 8, 2007, Plaintiff reported that she recently quit a job after six days. R. 354. On October 15, 2007, Plaintiff rated her depression at one, anxiety at two, and quality of life at eight. R. 354. She told her therapist that she was "happy in her life." R. 353. On October 31, 2007, Plaintiff stated that she was feeling lethargic and "not herself." R. 351. Dr. Laster started her on Prozac,[9] and indicated this was prescribed for depression, hypothyroidism, insomnia and symptoms of psychosis. *Id.*

On November 5, 2007, Plaintiff stated that she was learning new coping strategies at therapy, which led to increased changes. R. 350. By November 26, 2007, Plaintiff rated her depression at two, anxiety at one, and quality of life at eight. R. 348. She stated that she had a good holiday. R. 348.

By December 10, 2007, she reported feeling "pretty good." R. 346. On December 19, 2007, Dr. Laster found that Plaintiff had increased energy and ability to concentrate since starting Prozac, but not the "robust response" that he sought. R. 344. Her affect was somewhat depressed. *Id.* Dr. Laster increased her dosage of Prozac and reduced her dose of Risperdal. *Id.*

On January 14, 2008, Plaintiff reported to Dr. Laster that she felt "significantly better" in the past month since Dr. Laster increased her Prozac dosage. R. 342. No medication changes were made. *Id.* On January 28, 2008, Plaintiff told her therapist that her attitude was changing and she was now experiencing compassion and understanding. R. 340. She rated her depression at zero, anxiety at two, and quality of life at eight. *Id.* Plaintiff married her long-term partner. R.

---

[9] Prozac is indicated for the treatment of major depressive disorder. Prozac, www.rxlist.com/prozac-drug/indications-dosage.htm (last visited Dec. 20, 2012).

340.

Dr. Laster completed a Psychiatric/Psychological Impairment Questionnaire on February 1, 2008 (R. 329-336) in which he indicated that he started treating Plaintiff in September 2006 and last saw Plaintiff in January 2008. R. 329. Dr. Laster opined that Plaintiff managed her life to avoid stress by staying at home and not driving, and "[t]his is probably maximum level of functioning for her." R. 329. Of the twenty subcategories in the areas of understanding and memory, sustained concentration and persistence, social interactions, and adaptation, Plaintiff had no or mild limitations in eleven subcategories. R. 332-34. She had moderate limitations - defined as significantly limited but not totally precluded - in six subcategories: her ability to: (1) understand and remember detailed instructions; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; (3) work in coordination with or proximity to others without being distracted by them; (4) accept instructions and respond to criticism from supervisors; (5) respond appropriately to changes in the work setting; and, (6) set goals or make plans independently. *Id.* She exhibited marked limitations - defined as effectively precluded - in three subcategories: her ability to (1) maintain attention and concentration for extended periods; (2) complete a normal work week without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods; and, (3) travel to unfamiliar places or use public transportation. *Id.*

Dr. Laster diagnosed major depression, recurrent, moderate to severe. R. 329. Plaintiff's GAF score was 45-50. *Id.* Clinical findings included poor memory, appetite disturbance with weight change, sleep disturbance, mood disturbance, recurrent panic attacks, anhedonia or pervasive loss of interests, psychomotor retardation, feelings of guilt/worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, decreased energy, occasional anxiety,

and occasional hostility and irritability. R. 330. Plaintiff's primary symptoms were depression, sleep problems, decreased appetite, a depressed mood, anxiety, worries, and isolation. R. 331. She had been hospitalized at least twice for her symptoms. *Id.*

Dr. Laster reported that Plaintiff experienced episodes of deterioration or decompensation in work or work-like settings that caused her to withdraw from that situation and/or experience an exacerbation of signs and symptoms evidenced by her attempt to work and being forced to quit after less than one week. R. 334. Dr. Laster found that Plaintiff is not a malingerer. R. 335. She was found incapable of handling even low stress work, evidenced by her isolation and failure to be able to return to work. *Id.* Dr. Laster noted that she experienced good days and bad days. *Id.* Dr. Laster opined that the symptoms and limitations detailed in the questionnaire were present since at least July 2006. R. 336.

On February 11, 2008, Plaintiff stated she was doing "reasonably well" except for poor sleep. R. 418. Dr. Laster increased her dosage of Trazodone. *Id.* On May 12, 2008, Plaintiff reported that she got married since her last visit and was "doing well," however, she also reported increased sadness, anxiety, and problems with sleep after the death of her cousin. R. 416. Dr. Laster increased her dose of Trazodone and started BuSpar.[10] *Id.* At the next visit, on June 23, 2008, Plaintiff reported that although she experienced the recent deaths of three family members, which were difficult for her, she was doing fairly well. R. 415.

On August 25, 2008, Plaintiff stated that she was significantly more depressed with very little motivation, energy, or interests in doing things. R. 414. Dr. Laster reported that she looked tired and had a restricted affect. *Id.* He discontinued Prozac and started her on Zoloft.[11] *Id.*

---

[10] BuSpar is indicated for the treatment of anxiety disorders. Buspar, www.rxlist.com/buspar-drug-indications-dosage.htm (last visited Dec. 20, 2012).
[11] Zoloft is indicated for the treatment of major depressive disorder. Zoloft, www.rxlist.com/zoloft-drug-indications-dosage.htm (last visited Dec. 20, 2012).

Plaintiff returned on October 27, 2008, and reported not doing well. R. 406. She stated that she lost 12 pounds due to loss of appetite and her insurance would not cover Zoloft. *Id.* Dr. Laster advised her about a financial program to help her with the cost of Zoloft. *Id.*

Dr. Laster completed a narrative report regarding Plaintiff on December 8, 2008. R. 401. He noted that Plaintiff began treatment with him in October 2006 following a hospitalization in New York in July 2006. *Id.* He began seeing her every two weeks, but then reduced her visits to once every month or two. R. 401. Dr. Laster noted that she was treated in group therapy and with psychotropic medications. *Id.* She was doing fair until early July 2008, and has done poorly since that time. *Id.* He opined that Plaintiff was "quite limited due to her lack of energy, lack of motivation and lack of interest in things she is normally interested in." *Id.* Dr. Laster further opined that Plaintiff could not do full-time work at this time, but it was not clear if her impairment would exceed twelve months. *Id.* He noted that she tends to look better than she actually is doing. *Id.* Dr. Laster opined that she was unable to work, and had a guarded to fair prognosis. *Id.*

On December 22, 2008, Plaintiff reported that she was able to get Zoloft, which was working much better. R. 408. Dr. Laster stated that Plaintiff's affect improved, her sleeping was better, and she was more energetic. *Id.*

On February 16, 2009, Plaintiff reported not feeling well and was found to have poor sleep and a depressed affect. R. 409. On April 27, 2009, Plaintiff complained of very little energy and very little interests in activities, and she felt like staying in bed most of the time. R. 411. Plaintiff felt "significantly better" with Zoloft as compared to Prozac. R. 409. Dr. Laster increased her dose of Zoloft. *Id.* On June 22, 2009, Plaintiff stated that she had days when she had difficulty "getting herself together" in the morning and some panic attacks. R. 412. She was

prescribed Zoloft and Abilify.[12] *Id.* On July 20, 2009, Plaintiff reported feeling the same; her Abilify dosage was increased. R. 413.

On February 1, 2010, Dr. Laster completed a second Psychiatric/Psychological Impairment Questionnaire. R. 430-37. Dr. Laster stated that Plaintiff had no or mild limitations in ten subcategories in the areas of understanding and memory, concentration and persistence, social interactions, and adaptation. R. 433-34. He assessed moderate limitations in five subcategories: ability to (1) perform activities within a schedule; (2) work in coordination with or proximity to others without being distracted by them; (3) accept instructions and respond appropriately to criticism; (4) respond appropriately to changes in work setting; and (5) set realistic goals and make plans independently. R. 433-34. Dr. Laster opined that Plaintiff had marked limitations in five subcategories: ability to (1) understand and remember detailed problems; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods of time; (4) complete normal workweek without interruptions and perform at consistent pace; and, (5) travel to unfamiliar places or use public transportation. R. 433-34. Dr. Laster expected Plaintiff's impairment to last more than twelve months, and believed that it was "unlikely that she would be able to persist with a job that had even limited stress." R. 436.

On December 2, 2010, Dr. Laster completed a second narrative report regarding Plaintiff. R. 522. Dr. Laster stated that Plaintiff consistently had a very low energy level and lack of interest in activities, although there was a period in 2008 when she had more energy. R. 522. He stated that Plaintiff's symptoms remained essentially the same despite a variety of different medication regimens. R. 522. He did not think that Plaintiff could do full-time competitive work. R. 522.

---

[12] Abilify is indicated for the treatment of schizophrenia, bipolar disorder, and adjunctive therapy for major depressive disorder. Abilify, www.rxlist.com/abilify-drug/indications-dosage.htm (last visited Dec. 20, 2012).

Dr. Laster completed a third narrative report regarding Plaintiff on July 20, 2011, which was submitted to the Appeals Council. R. 524-525. The doctor explained that his findings previously detailed in his questionnaires described Plaintiff's functioning over a longitudinal period of time. R. 524. He noted that she had periods of improvement, but these periods were always brief. *Id.* Dr. Laster also noted that while Plaintiff stated at many office visits that she felt "fairly well," this was a rote response and not indicative of her functioning. *Id.* He reported that Plaintiff's periods of improvement during his treatment were limited and not persistent. *Id.* He stated that she wanted very much to return to work, but when she did, she could not maintain it for even one week. *Id.* Dr. Laster concluded that Plaintiff lacked the capacity to obtain or maintain a competitive job. R. 525.

## B. Plaintiff's Statement and Hearing Testimony

On January 7, 2007, Plaintiff filled out a "Function Report," (R. 185-92), stating she took care of her personal hygiene, fixed her own meals, did the household chores, and did the laundry once per week (R. 186-87). Plaintiff went outside at least three times per day and could go out alone, but she never learned how to drive so she needed someone to take her. R. 188. She was able to pay her bills, count change, and handle a savings account. R. 188. She talked on the phone with others and went to church on Sunday and Bible study on Wednesday. R. 189. She had no problems getting along with authority figures, did not handle stress well, and could handle routine changes well in some circumstances. R. 191.

At her hearing before the ALJ, which took place on May 6, 2008, Plaintiff testified that she was born in 1951. R. 73. She testified that she had two years of college (R. 74), and she was a teacher and managed a dry cleaning laundry facility (R. 74-75). Plaintiff testified that she last worked for an extended period in 2000–2005. R. 74.

Plaintiff testified that the primary reason that she could not work was depression, which caused panic attacks, mood swings, and concentration problems. R. 73, 76. Plaintiff testified that she was unable to concentrate for long periods of time, and suffered from anxiety attacks and mood swings. R. 73. She tried to return to work in 2008 working as a factory assembler, but only maintained the job three or four days because she could not perform the required tasks. R. 74-75. She had anxiety attacks approximately every other day for 15 to 20 minutes. R. 76. Plaintiff stated that she could not concentrate because she was always focused on her depression. *Id.* She did not go out alone because she did not feel safe. R. 77. Plaintiff also described difficulties with short-term memory loss. *Id.* Plaintiff testified that her problems with concentration and memory prevented her from reading, driving, and taking public transportation and she also missed a few doctors' appointments, despite writing down the dates. R. 77-78. She did not like being around other people, and got nervous and felt lightheaded and sweaty when she was around others. *Id.* She did not go grocery shopping or to the movies. R. 78-79. She went to church once a week, but could not go alone. R. 79. Even when she was at home, either her daughter or fiancé was always there with her. R. 79-80. In a typical day, Plaintiff got up and listened to the radio. R. 80. Sometimes she watched TV, but she had difficulty concentrating on it. *Id.* She talked on the phone to friends and relatives, who also visited. *Id.* Plaintiff rarely cooked. R. 80-81. On good days, she could do dishes and vacuum. R. 81. On bad days, she spent most of the day lying down, as her body ached and she could not function. R. 81. Plaintiff had bad days two to three times a week. *Id.*

The Vocational Expert ("VE") testified that an individual of Plaintiff's age, education, and work history who was limited to performing simple, repetitive, routine tasks with no interaction with the general public and minimal interaction with co-workers, could perform work

as a dish carrier, a store laborer, and a cleaner. R. 89-90. The VE testified that an individual who was limited as described by Dr. Laster would be unable to perform these jobs. R. 92-93. She stated that an individual who was absent from work three times a month would be unable to perform any work. R. 93.

### III. <u>STANDARD OF REVIEW</u>

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2012); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than preponderance. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

When reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589; *Hays*, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Craig*, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed, unless the decision was reached by means of an improper standard or misapplication of the law. *Perales*, 402 U.S. at 390; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th

Cir. 1987) (citing *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980)).

Thus, reversing the denial of benefits is appropriate only if either (A) the ALJ's determination is not supported by substantial evidence on the record, or (B) the ALJ made an error of law. *Coffman,* 829 F.2d at 517.

## IV. <u>ANALYSIS</u>

To qualify for SSI and/or DIB, an individual must meet the insured status requirements of these sections, be under age sixty-five, file applications for DIB and SSI, and be under a "disability" as defined in the Act. The Social Security Regulations define "disability" as the inability to do any substantial gainful activity, by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505(a) (2012); *see also* 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A) (2012). To meet this definition, the claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.

In evaluating disability claims, the regulations promulgated by the Social Security Administration provide that all material facts will be considered to determine whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The ALJ must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals a condition contained within the Social Security Administration's official listing of impairments, (4) has an impairment that prevents her from past relevant work, and (5) has an impairment that prevents her from any substantial gainful employment. An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative

answers to questions three or five establish disability. This analysis is set forth in 20 C.F.R. § 404.1520.

## A. ALJ's Decision

On April 26, 2010, following the second administrative hearing, the ALJ made the following findings with respect to Plaintiff. R. 18-29. Plaintiff met the insured status requirements of the Act through December 31, 2010, and Plaintiff had not engaged in substantial gainful activity since December 31, 2005, the alleged onset date of disability. R. 21. Second, Plaintiff suffered from "an affective disorder and pain s/p lower back strain" that represent severe impairments. R. 21. Third, Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 22.

After step three, but prior to deciding whether Plaintiff can perform her past relevant work at step four, the ALJ determined Plaintiff's RFC. The ALJ found that Plaintiff has the RFC to perform "the exertional demands of medium work with the following nonexertional limitations: [Plaintiff] can perform simple, routine and repetitive tasks requiring no interaction with the general public and minimal interaction with co-workers." R. 23-24. In determining Plaintiff's RFC, the ALJ assigned "significant weight" to the opinion of Dr. Deaver, the DDS medical consultant, that Plaintiff's mental impairment causes moderate limitations in her concentration, persistence or pace and her ability to interact appropriately with the public. R. 26. He assigned "minimal weight" to Dr. Deaver's opinion that Plaintiff's mental impairment causes moderate limitations in her ability to complete a normal workday or work week. R. 26.

Further, the ALJ assigned minimal weight to the opinions of Plaintiff's treating psychologist, Dr. Laster. R. 27. The ALJ found his RFC assessment was "supported by the

longitudinal medical evidence documenting persistent symptoms of depression and anxiety but improvement in the claimant's condition with treatment and therapy and the need for only conservative treatment for episodes of increased symptoms." R. 27.

At the fourth step, the ALJ found Plaintiff was unable to perform any past relevant work. R. 27. At step five of the sequential analysis, the ALJ found that, considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 27.

In her memorandum in support of summary judgment, Plaintiff alleged the following specific errors: (1) the ALJ failed to follow the treating physician rule, and the Appeals Council failed to consider new and material evidence; (2) the ALJ failed to properly evaluate Plaintiff's credibility; and (3) the ALJ relied upon flawed vocational expert testimony. Pl.'s Mot. for Sum. J. 10-21.

## B. Assessment of Medical Evidence

Plaintiff asserts the ALJ failed to apply the appropriate legal standards when weighing the medical opinion evidence and failed to weigh Dr. Laster's opinions under any of the factors in 20 C.F.R. § 404.1527. Pl.'s Mot. for Sum. J. 10-15.  Plaintiff further argues remand is warranted for consideration of new evidence submitted to the Appeals Council, which directly contradicts the ALJ's only reason for rejecting the opinion of Dr. Laster. Pl.'s Mot. for Sum. J. 12-13.  Defendant asserts that, with the exception of "isolated and temporary life events," such as the deaths of family members and an inability to get medications, the treatment notes indicate Plaintiff's depression was controlled. Def.'s Mem. 17; ECF No. 10.  Therefore, according to Defendant, substantial evidence supports the ALJ's decision to discount Dr. Laster's "extreme, unsupported opinion." Def. Mem. 19.

The ALJ assigned minimal weight to the opinions of Plaintiff's treating psychiatrist, Dr. Laster, specifically his opinion that Plaintiff had marked limitations in her ability to maintain attention and concentration, and marked limitations in her ability to complete a normal workday. R. 27. The ALJ explained Dr. Laster's opinions were not consistent with clinic notes showing Plaintiff was improving, that she reported low levels of depression and anxiety, and that she was able to marry and the marriage was going well. R. 26. Further, the ALJ concluded Dr. Laster's findings of "marked" limitations in concentration and ability to complete a workday were not consistent with Dr. Laster's comment in December 2008 that Plaintiff had done fairly well until July 2008. R. 26. The ALJ accounted for Plaintiff's reports of increased depression with the deaths of family members or an inability to get prescribed medications. R. 26-27. The ALJ found no convincing evidence of symptoms that preclude all work activity, and assigned Dr. Laster's conclusions regarding the severity of Plaintiff's limitations minimal weight. R. 27.

The ALJ failed to address all necessary factors prior to assigning Dr. Laster's opinion minimal weight. The regulations provide that after step three of the ALJ's five-part analysis, but prior to deciding whether a claimant can perform past relevant work at step four, the ALJ must determine a claimant's RFC. 20 C.F.R. §§ 404.1545(a). The RFC is a claimant's maximum ability to work despite her limitations. *Id.* at 404.1545(a)(1). The ALJ then uses that RFC to determine whether the claimant can perform her past relevant work. *Id.* at § 404.1545(a) (5). The determination of RFC is based on a consideration of all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1545(a)(3).[13]

In making the RFC determination, the ALJ must consider the objective medical evidence

---

[13] "Other evidence" includes statements or reports from the claimant, the claimant's treating, or nontreating sources, and others about the claimant's medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how impairments or symptom affect the claimant's ability to work. 20 C.F.R. § 404.1529(a).

in the record, including the medical opinions of the treating physicians. Under the federal regulations and Fourth Circuit case-law, a treating physician's opinion merits "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." 20 C.F.R. § 404.1527(d)(2). Conversely, "if [a] physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. However,

> a finding that a treating physician's opinion is not well-supported by medically acceptable clinical and diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.

SSR 96-2, 1996 WL 374188, at *4 (S.S.A.).

The regulations require the ALJ to evaluate every medical opinion. Accordingly, even if a treating physician's opinion is not entitled to controlling weight, it is "still entitled to deference and must be weighed using all of the factors" provided by the regulations. *Id.* at * 5. Those factors are: (1) "[l]ength of treatment relationship and the frequency of examination;" (2) "[n]ature and extent of treatment relationship;" (3) degree of "supporting explanations for their opinions;" (4) consistency with the record; and (5) the specialization of the physician. 20 C.F.R. § 404.1527(d)(2)-(6).

Under the applicable regulations, the ALJ is required to explain in his decision the weight assigned to *all* opinions, including treating sources, non-treating sources, State agency consultants, and other nonexamining sources. 20 C.F.R. § 416.927(e)(2)(ii). Therefore, when the ALJ's decision is not fully favorable to the claimant, the decision must contain

> specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be

> sufficiently specific to make clear to subsequent reviewers the weight the
> adjudicator gave to the treating source's medical opinion and the reasons for
> that weight.

SSR 96-2, 1996 WL 374188, at *5 (S.S.A.). This specificity requirement is necessary because

the reviewing court

> face[s] a difficult task in applying the substantial evidence test when the
> [Commissioner] has not considered all relevant evidence. Unless the
> [Commissioner] has analyzed all evidence and has sufficiently explained
> the weight he has given to obviously probative exhibits, to say that his
> decision is supported by substantial evidence approaches an abdication of
> the court's 'duty to scrutinize the records as a whole to determine whether
> the conclusions reached are rational.'

*Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir. 1977) (quoting *Oppenheim v. Finch*, 495 F.2d

396, 397 (4th Cir. 1974)).

Dr. Laster started treating Plaintiff in October 2006, and continued treating Plaintiff after

her hearing before the ALJ. R. 522-525. Dr. Laster consistently found that Plaintiff had

significant mental limitations. In October 2006, Dr. Laster diagnosed Plaintiff with major

depressive disorder, recurrent, moderate to severe, and assigned her a GAF of 50, indicating

serious symptoms or a serious impairment. R. 255. In February 2008, Dr. Laster assigned the

same diagnosis and a GAF of 45-50. R. 329. He also completed a questionnaire indicating

Plaintiff was markedly limited - defined as effectively precluded - in her ability to maintain

attention and concentration for extended periods, complete a normal workweek without

interruptions from psychologically based symptoms, and to perform at a consistent pace without

an unreasonable number and length of rest periods. R. 329, 332-34. In December 2008, Dr.

Laster opined that Plaintiff could not do full-time work at that time, but it was not clear if her

impairment would exceed twelve months, and her prognosis was guarded to fair. R. 401. On

February 1, 2010, Dr. Laster completed a second questionnaire finding Plaintiff remained

markedly limited in her ability to maintain attention and concentration for extended periods, complete a normal workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 433-36. Further, he expected her impairment to last more than twelve months. R. 433-36. In December 2010, Dr. Laster opined Plaintiff's symptoms remained essentially the same despite a variety of different medication regimens, and he did not think Plaintiff could do full-time competitive work. R. 522. Dr. Laster indicated his opinions were based upon evidence of appetite disturbance with weight change, sleep disturbance, mood disturbance, recurrent panic attacks, anhedonia or pervasive loss of interests, psychomotor retardation, feelings of guilt/worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, decreased energy, occasional anxiety, and occasional hostility and irritability. R. 330, 431.

The only other opinion in the record is that of Dr. Deaver, the DDS medical consultant, who did not perform any examination of Plaintiff, and reviewed only those medical records of Plaintiff existing prior to February 26, 2007, almost four years prior to Plaintiff's date last insured. R. 297-313. The ALJ assigned "significant weight" to Dr. Deaver's opinion that Plaintiff's mental impairment caused moderate limitations in her concentration, persistence or pace and her ability to interact appropriately with the public. R. 26. The ALJ assigned "minimal weight" to Dr. Deaver's opinion that Plaintiff's mental impairment caused moderate limitations in her ability to complete a normal workday or work week (R. 300), explaining that this finding was not consistent with Dr. Deaver's opinion that Plaintiff had mild limitations in her ability to interact with supervisors and co-workers and her ability to understand, remember and carry out simple instructions. R. 26.

The ALJ offered two basic reasons for assigning minimal weight to the findings of Dr.

Laster in their entirety, and to the finding of Dr. Deaver that Plaintiff's mental impairment caused moderate limitations in her ability to complete a normal workday and work: (1) Plaintiff improved with treatment, and (2) Plaintiff has only required conservative treatment since her hospitalization in 2006. R. 26-27. The only treatment notes in the record, following Plaintiff's hospitalization in July-August 2006, are those of Dr. Laster and the therapists who worked with Dr. Laster at the Department of Human Services. Therefore, the records upon which the ALJ is relying to discount Dr. Laster's opinions are the notes from Dr. Laster's own treatment group.

If a treating physician's opinion is not entitled to controlling weight, the ALJ must weigh the factors outlined in 20 C.F.R. § 404.1527(d)(1)-(6) and §416.927(d)(2)-(6). *Burch v. Apfel*, 9 Fed.App'x 255, 259 (4th Cir. 2001) (per curiam); see also *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000) (joining other federal courts in requiring the ALJ to consider § 404.1527(d) factors when declining to give controlling weight to the treating physician's opinion, and noting that ALJ should consider factors on remand). The ALJ failed to address these factors when he assigned Dr. Laster's opinions minimal weight. Accordingly, the Court is unable to appropriately review the ALJ's decision and determine whether substantial evidence on the record supports that decision.

In addition, following the ALJ's decision, Dr. Laster submitted a report to the Appeals Council explaining that, while there were periods of time when Plaintiff's symptoms improved to a limited extent, the improvements did not persist over time. R. 524-25. Dr. Laster further commented that Plaintiff's report, during appointments with Dr. Laster, that she felt "fairly well" was a "rote response." R. 524.[14]

---

[14] Plaintiff contends the Appeals Council erred when it issued a "pro forma" denial of the appeal, stating it reviewed the new evidence submitted, but found it did not provide a basis for changing the ALJ's decision, without further explanation. Pl.'s Mot. for Sum. J. 12; R. 6-7. The Court disagrees. As pointed out by Defendant, "nothing in the Social Security Act or regulations promulgated pursuant to it requires that the Appeals Council explain its rationale

Plaintiff asserts remand is appropriate for consideration of the new evidence. Pl.'s Mot. for Sum. J. 13. The Appeals Council will consider new and material evidence if it relates to the period on or before the ALJ's decision. *See* 20 C.F.R. § 404.970 and § 416.1470. Moreover, this Court will consider such new, material evidence that relates to the period on or before the ALJ's decision even though the Appeals Council did not grant review of the case. *See Wilkins v. Sec., Dept. of HHS*, 953 F.2d 93, 95 (4th Cir. 1991) (en banc). Evidence is "new" if it is not cumulative or duplicative, and is "material" if it creates a reasonable possibility of changing the outcome of the ALJ's decision. *See Wilkins*, 953 F.2d at 96. Remand is appropriate for consideration of the new evidence when the Appeals Council fails to provide a discussion of the new evidence, and the record as a whole, including this evidence, shows either (1) the Commissioner's decision is not supported by substantial evidence, or (2) it cannot be determined if substantial evidence supports the ALJ's decision based on the record, including the new evidence. *See Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011). The Court finds Dr. Laster's report constitutes new material evidence that relates to the period before the ALJ's decision. The new evidence submitted by Dr. Laster directly contradicts one of the ALJ's main reasons for rejecting Dr. Laster's opinion, that Plaintiff's improvement was significant and sustained.

Upon review, the Court finds that the ALJ made an error of law by not properly weighing the factors outlined in 20 C.F.R. § 404.1527(c)(1)-(6) and §416.927(c)(2)-(6) prior to assigned Dr. Laster's opinion minimal weight. Further, after reviewing the ALJ's opinion and the new evidence from Dr. Laster submitted to the Appeals Council, it cannot be determined if substantial evidence supports the ALJ's decision based on the record, including the new evidence. *See Knight v. Astrue*, 388 Fed. App'x 768, 773 (10th Cir. 2010) (remanding where

for denying review." *Meyer v. Astrue*, 662 F.3d 700, 702 (4th Cir. 2011).

treatment records submitted to Appeals Council undermined the ALJ's principle reason for discounting the mental health counselor's opinion). For these reasons, the case should be remanded. *Meyer*, 662 F.3d at 707; *Perales*, 402 U.S. at 390; *Coffman*, 829 F.2d at 517.

**C. Assessment of Plaintiff's Credibility**

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were "only partially credible to the extent they are inconsistent with" the ALJ's RFC assessment. R. 26. The ALJ further found Plaintiff's allegations inconsistent with objective findings and conservative treatment. R. 25.

The RFC determination must incorporate not only impairments supported by objective medical evidence, but also those impairments based on credible complaints made by the claimant. The ALJ uses a two-step analysis in evaluating a claimant's subjective complaints. *Craig*, 76 F.3d at 594. First, the ALJ must determine whether there is an underlying medically determinable impairment that could reasonably produce the claimant's pain or symptoms. *Id.* If the underlying impairment could reasonably be expected to produce the claimant's pain, the ALJ must then evaluate the claimant's statements about the intensity and persistence of the pain, as well as the extent to which it affects the individual's ability to work. *Id.* at 595. The ALJ's evaluation must take into account all available evidence, including a credibility finding of the claimant's statements regarding the extent of the symptoms, and the ALJ must provide specific reasons for the weight given to the claimant's subjective statements. *Id.* at 595-96.

This Court is required to give great deference to the ALJ's credibility determinations. *See e.g.*, *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488-91 (1951). The Fourth Circuit has held that "[w]hen factual findings rest upon credibility determinations, they should be accepted

by the reviewing court absent 'exceptional circumstances.'" *Edelco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997) (internal citations omitted). This Court's analysis is restricted to determining whether the ALJ's credibility determination is supported by substantial evidence and whether the ALJ employed the correct legal standard. *Craig*, 76 F.3d at 589.

The Regulations instruct the ALJ to evaluate the consistency of a plaintiff's statements against the evidence of record, and not against the ALJ's own RFC assessment. 20 C.F.R. § 404.1529(c)(4).[15] Nevertheless, after finding Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms she alleged, the ALJ stated that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are *inconsistent with the above residual functional capacity assessment*." R. 26. (emphasis added). As outlined above in Section IV. B., the Court cannot find the RFC determination in this case was made with full consideration of all the evidence on record. Accordingly, the Court cannot accept the ALJ's conclusion that Plaintiff's statements are not credible because they are inconsistent with the RFC determination. On remand, the ALJ is directed to evaluate the consistency of Plaintiff's statements against all available evidence of record, and provide specific reasons for the weight given to Plaintiff's statements.

## D. Vocational Expert Hypothetical

---

[15] *See also Maske v. Astrue*, 2012 WL 1988442, at *2-3, 14 (N.D. Ill. May 31, 2012) (finding remand to be appropriate where an ALJ discounted a plaintiff's credibility because her testimony did not mesh with the RFC determination, as the "ALJ's [] credibility analysis fail[ed] to build the required logical bridge between the evidence and the conclusion that her testimony was not credible"); *Spratt v. Astrue*, 2012 WL 1110018, at *23-24 (N.D. Iowa April 2, 2012) ( "[T]he 2010 decision [of the ALJ] is devoid of any reasons for his credibility determination. . . . The ALJ simply concluded that [Plaintiff's] testimony was 'inconsistent with the above residual functional capacity assessment. . . .' [T]he ALJ has failed in his duty to make an express credibility determination, detailing the reasons for discrediting the testimony, and setting forth inconsistencies in the record . . . ."); *Kelly v. Astrue*, 2011 WL 4443023, at *9 (N.D. Iowa Sept. 2, 2011) ("[T]he Court finds that the ALJ's decision lacks the required detail for discrediting a claimant . . . provid[ing] no reasons for discounting [claimant's] testimony other than 'his allegations are inconsistent with the ALJ's RFC assessment.'"). Indeed, a "bare conclusion that [Plaintiff's] statements lack credibility because they are inconsistent with 'the above residual functional capacity assessment' does not discharge the duty to explain." *Kotofski v. Astrue*, 2010 WL 3655541, at *9 (D. Md. Sept. 14, 2010).

In reaching the decision that Plaintiff was capable of performing work available in significant numbers in the national economy, the ALJ relied upon a VE's testimony in response to hypothetical questions. Plaintiff asserts the hypothetical presented to the vocational expert was not based upon consideration of all of Plaintiff's impairments as realistically set forth by the record. Pl.'s Mot. for Sum. J. 19.

To aid the ALJ in reaching a decision, the hypotheticals posed to a VE must account for all of the claimant's limitations as dictated by the record. *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989). If limitations are omitted from the hypothetical, the VE's testimony is of limited value, and may not constitute substantial evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2006) (citing *Walker*, 889 F.2d at 50). Failing to include limitations, and then relying on the deficient hypothetical to determine the availability of work suitable to the claimant is error. *Hancock v. Barnhart*, 206 F.Supp.2d 757, 767 (W.D.Va. 2002).

The ALJ posed the following hypothetical to the VE at Plaintiff's hearing:

> Assume I find that [Plaintiff] retains the residual functional capacity to perform work at all exertional capacities, however, she is restricted to performing simple, repetitive, routine tasks with no interaction with the public and minimal interaction with coworkers. Based on that residual functional capacity, are there any jobs in your opinion existing in significant numbers which [Plaintiff] could perform?

R. 89. The VE answered yes, there were unskilled, medium positions available as dish carrier, store laborer, and cleaner. R. 89-90. Plaintiff's attorney asked the VE to consider an individual who was moderately limited (defined as significantly limited but not totally precluded from performing the activity) in their ability "to perform activities within a schedule, maintain regular attendance[,] be punctual within customary tolerance . . . complete a normal work week without interruptions from psychologically-based symptoms." R. 92. The VE testified such a person

would not be able to perform the jobs the VE previously listed. R. 92-93. The VE further testified that a person expected to be absent at least three times a month could not perform any job. R. 93.

The ALJ relied on the first hypothetical to determine Plaintiff was not disabled. On remand, after appropriately addressing all factors in assigning weight to the opinions of Dr. Laster, the ALJ's opinion should consider the VE's testimony in light of all of Plaintiff's impairments, or explain why the impairments omitted are not supported by the record.

## V. <u>RECOMMENDATION</u>

Based on the foregoing analysis, it is the recommendation of this court that Plaintiff's Motion for Summary Judgment (ECF No. 8) be GRANTED to the extent that it seeks remand of the Commissioner's decision and DENIED to the extent that it seeks reversal and an entry of an order directing the award of benefits. The Court further recommends that Defendant's Motion for Summary Judgment (ECF No. 9) be DENIED and that the final decision of the Commissioner be VACATED and REMANDED for further administrative proceedings consistent with this Report and Recommendation.

## VI. <u>REVIEW PROCEDURE</u>

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's objection within fourteen (14) days after being served with

a copy thereof.

2. A district judge shall make a <u>de novo</u> determination of those portions of this Report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984), <u>cert. denied</u>, 474 U.S. 1019 (1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208 (1984).

_____/s/_____<br>
Tommy E. Miller<br>
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
December 20, 2012

## CLERK'S MAILING CERTIFICATE


A copy of the foregoing Report and Recommendation was mailed this date to each of the

following:


Joel C. Cunningham, Jr.
Law Offices of Binder and Binder
120 Edmunds Boulevard
P.O. Box 459
Halifax, VA 24558

Joel E. Wilson
United States Attorney's Office
101 W. Main St., Suite 8000
Norfolk, VA 23510


By _____
                Fernando Galindo, Clerk
                Deputy Clerk
                December _____, 2012